## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JACKIE R. WILKINS,

Plaintiff,

v.                                             Case No. 04-4024-KGS

PACKERWARE CORPORATION,

Defendant.

### MEMORANDUM AND ORDER

This matter comes before the court on plaintiff's two post-trial motions: (1) plaintiff's

Motion to Alter, Amend the Judgment, for Judgment Notwithstanding the Verdict, and/or

Motion to Resubmit the Case to the Jury (Doc. 88); and (2) plaintiff's Motion for Renewed

Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105).  Defendant

Packerware filed responses to plaintiff's motions (Docs. 104 and 106).  Plaintiff did not file a

reply to his Motion to Alter, Amend the Judgment; however, plaintiff did file a Reply (Doc. 107)

to his Motion for New Trial.  The court has reviewed the motions. While plaintiff has requested

oral arguments on these motions, the court finds oral arguments are not necessary and is now

prepared to rule.

### I.       Relevant Factual Background

In this action, plaintiff claims that his termination from employment with defendant

Packerware Corporation ("Packerware") was in violation the Family and Medical Leave Act

("FMLA"), 29 U.S.C. §2601 *et seq.*,  and Kansas common law prohibiting retaliation for his

exercise of protected rights under the Kansas Workers Compensation Act, K.S.A. §44-501 *et*

*seq.* The following facts were undisputed or, if disputed, are viewed in a light most favorable to the non-moving party.[1]

Plaintiff, Jackie Wilkins, was employed as a print operator in the defendant's printing department from 1989 until his discharge in 2002. At the time of the incident giving rise to this suit, plaintiff was working the evening shift. During the entire tenure of plaintiff's employment, defendant maintained a written attendance policy outlined in its Employee Handbook, distributed to all employees. Under the attendance policy, various unexcused absences are charged a certain number of points. Successive point totals within a one-year period can lead to progressive discipline, and the accumulation of more than nine points subjects an employee to discharge. While in defendant's employ, plaintiff received numerous "write-ups" for accumulated points. During most of plaintiff's employment, defendant also maintained a leave of absence policy, including a policy for leave under the FMLA. Prior to the incidents that gave rise to the instant lawsuit, plaintiff took periods of FMLA leave for his own medical conditions and to care for his ailing wife. During his employment tenure, plaintiff also availed himself of workers' compensation benefits, reporting various minor job-related injuries. Following all such past instances of leave, plaintiff was returned to his regular job duties.

During his evening shift on March 4, 2002, plaintiff reported that wrist pain from which he suffered for some time had become acute. He believed this was a work-related injury and sought treatment for it that very evening at the Lawrence Memorial Hospital. The following day, plaintiff saw Doctor Fevurly. After examining the plaintiff, Dr. Fevurly prescribed

---

[1]*See Acker v. Burlington N. & Sante Fe R*y. *Co.*, 388 F. Supp. 2d 1299, 1301 (2005)(citing *Sanjuan v. IBP, Inc.*, 275 F.3d 1290, 1293 (10th Cir. 2002) and *Veile v. Martinson*, 258 F.3d 1180, 1188 (10th Cir. 2001)).

restrictions to his right arm activities and scheduled him for a follow up appointment within two weeks. Plaintiff then met with Ms. Deanna Hemming ("Hemming"), defendant's Benefits Coordinator, who determined that plaintiff's restrictions were not consistent with his regular job duties in the printing department.  Hemming offered plaintiff the choice of accepting a light duty position in the Quality Assurance ("QA") department or staying home without pay until he was able to return to his regular job.  Plaintiff indicated that he would like to work the light duty shift.  All QA work is done during the morning shift, which begins at 7 a.m., when the QA supervisor, Mark Quackenbush ("Quackenbush"), is on duty to oversee the employees.

On March 7, 2002, plaintiff called Hemming around 8:00 a.m. – an hour after his starting time – and left a phone message informing her that he was not coming to work.  In his message plaintiff indicated that he would begin his work on Monday, March 11, 2002.  Plaintiff did not show up for work on March 8, and did not call in.  On March 11, plaintiff once again telephoned around 8 a.m. and left Hemming another message stating that he was not coming to work. Plaintiff did not explain the reason behind his absence on any of these occasions.

Plaintiff did report to work on Tuesday, March 12, at 7 a.m.  That day plaintiff worked until 12:15 p.m., at which time he clocked out and never returned.  At 3:45 p.m. that afternoon plaintiff was scheduled for another doctor's appointment in Shawnee Mission, KS.  Defendant does not maintain a written policy regarding the amount of time its employees may take off to attend medical appointments.  Defendant specifically informed the plaintiff that he needed to arrive at his doctor's appointment fifteen minutes early to complete the necessary paperwork. Plaintiff used the time between his departure from work and the appointment to eat lunch at his house, shower, change his clothes and drive to the doctor's office.

3

Under the defendant's attendance policy, missing a scheduled shift calls for the assessment of one attendance point.  Failure to report an absence prior to the beginning of the shift that is missed is assessed a total of three attendance points.  Early departure during any shift is assessed one-half attendance point.  Accordingly, plaintiff was assessed three attendance points each for the March 7 and March 11 absences and a one-half attendance point for leaving early on March 12.  Plaintiff was not assessed any points for his absence on March 8.

On March 13, 2002, the day after his doctor's appointment, defendant suspended the plaintiff until March 15, on which date the plaintiff was terminated.  The decision to terminate the plaintiff was made by Mr. Kevin Woods ("Woods"), defendant's Human Resources Director.  At the time of his termination, plaintiff had 14.5 attendance points.  Accumulation of more than 9 attendance points was grounds for discharge under defendant's policies.  On March 19, 2002, the plaintiff participated in a termination review arranged by the defendant and conducted by two of the defendant's managers - David Yates ("Yates") and Ross Freese ("Freese").  Yates and Freese upheld the termination, concluding that the plaintiff was properly assessed points for the days he missed, that the overall circumstances of his termination were fair, and that policy had been followed.

The case was tried to a jury beginning on Monday, November 14, 2005.  The trial concluded on the morning of November 18, 2005.  That same day, at approximately 2:25 p.m., the jury returned its verdict for defendant on all claims.  Upon the verdict being read, neither party made any objection.  The court then directed the Clerk of the Court to enter judgment, and dismissed the jury.

Later that day, at approximately 3:38 p.m., plaintiff's counsel, David Alegria, e-mailed

4

the court and defense counsel, stating that:

> "A review of the jury verdict demonstrates that it is internally inconsistent.  Therefore, plaintiff wants to interpose a contemporaneous objection to entry of judgment in this case.  Plaintiff believes that the Court ought to fashion a remedy to resolve the inconsistencies of the verdict.  Thank you.  David O. Alegria."

This was the sole content of the e-mail.  Plaintiff did not file any type of motion at this time, nor did plaintiff's counsel explain to the court which portion(s) of the jury verdict he believed were "internally inconsistent."  At 5:11 p.m., defense counsel replied via e-mail, stating:

> "Responding to Mr[.] Alegria's challenge to the jury's verdict responses, we are aware of no inconsistencies.  Whatever inconsistencies Mr[.] Alegria believes to exist he should be required to spell out.  J.S. Harbuck"

Later that evening, at approximately 5:44 p.m., plaintiff's counsel e-mailed chambers and defense counsel again:

> "In addition to plaintiff's objection to the jury verdict, plaintiff has filed a motion that briefly and succinctly attempts to set forth the issues identified by plaintiff so far.  The motion was filed at 4:56 p.m. today.  Thank you.  David O. Alegria."

Plaintiff filed his "Motion to Alter, Amend the Judgment, for Judgment Notwithstanding the Verdict and/or Motion to Resubmit the Case to the Jury" (Doc. 88) shortly before close of business on November 18, 2005.

Then, at approximately 6:14 p.m., still on November 18, 2005, plaintiff's counsel e-mailed the court and opposing counsel one last time, stating:

> "My previous email failed to mention that we believe that the verdict was the result of confusion by the jury since the parties did not dispute Mr. Wilkins' work injury.  Thank you.  David O. Alegria.."

On Monday, November 21, 2005, the Clerk filed a Judgment in Favor of Defendant with Respect to All Claims Filed by Plaintiff (Doc. 103). On December 6, 2005, plaintiff filed a

timely Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial

(Doc. 105).  Defendant Packerware filed responses to plaintiff's motions (Docs. 104 and 106).

Plaintiff did not file a reply to his Motion to Alter, Amend the Judgment; however, plaintiff did

file a Reply to his Motion for New Trial (Doc. 107).  The court has reviewed the motions and the

parties' memoranda and is prepared to rule.

## II.  Discussion

### A.  Plaintiff's Motion to Alter, Amend the Judgment, for Judgment Notwithstanding the Verdict, and/or Motion to Resubmit the Case to the Jury (Doc. 88).

In his first motion (Doc. 88), plaintiff moved to alter or amend the judgment, for

judgment notwithstanding the verdict, and to resubmit the case to the jury.  Plaintiff raised three

grounds in this motion: (1) that the jury's answer to Question 1 of Section III of the Verdict

Form is inconsistent with its answer to Question 4 of Section I; (2) that the jury's answer to

Question 2 in Section III of the Verdict Form is inconsistent with its answer to Question 2 of

Section I; and (3) that the court incorrectly instructed the jury on the definition of "serious health

condition."  The court shall analyze each of these arguments in the context of a motion to

resubmit to the jury, motion for judgment notwithstanding the verdict, and a motion to alter or

amend the judgment, respectively.

### 1.  Plaintiff's Motion to Resubmit the Case to the Jury

As an initial matter, the court notes that plaintiff made no motions to resubmit any of the

special verdict questions to the jury at the time the verdict was read.  Second, the court notes that

the jury had been discharged in this matter.[2]  Finally, Fed. R. Civ. P. 49(a) does not provide for

resubmission to the jury.[3]  Based upon these circumstances, and based on the lack of specific

direction in the rule, the court concludes that it lacks authority to resubmit a special verdict at

this time.[4]  Therefore, the court will deny Plaintiff's Motion to Resubmit the Case to the Jury.

### 2.    Plaintiff's Motion for Judgment Notwithstanding the Verdict

The court notes that plaintiff's Motion for Judgment Notwithstanding the Verdict does

not exist in these explicit terms in the federal courts.  However, Fed. R. Civ. P. 50(b) provides

for renewal of motion for judgment after trial.

Fed. R. Civ. P. 50(b) provides:

> The court can enter judgment that is inconsistent with the jury's verdict if it
> determines that the verdict was not supported by the evidence.  However, a
> prerequisite to a motion for judgment after trial is a motion for judgment as a
> matter of law at the close of the record.[5]

Additionally, a motion for judgment after trial must state the grounds for relief,[6] and may

include only those grounds raised in the motion for judgment as a matter of law.[7]

---

[2]The jury returned its verdict at 2:25 p.m. on November 18, 2005, and was discharged shortly thereafter.  *See* (Doc. 94).  Plaintiff did not submit his motion to resubmit the case to the jury until 4:56 p.m. on November 18, 2005 – nearly two and a half hours later.

[3]*Johnson v. ABLT Trucking Co*, 412 F.3d 1138, 1141-42 (10th Cir. 2005).

[4]*See Id.*

[5]Fed. R. Civ. P. 50(b).

[6]*Andreas v. Volkswagen of America, In.c*, 336 F.3d 789, 794 (8th Cir. 2003).

[7] *See Staley v. Bridgestone/Firestone, Inc.*, 106 F.3d 1504, 1508 (10th Cir. 1997); *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289-90 (11th Cir. 1998)(grounds for Rule 50(b) motion must be clear from the record so that the court can ensure that setting aside the verdict would not be a surprise to the non-movant); *See also* Advisory Committee Notes on Fed. R. Civ. P.

While plaintiff titles this motion in part as a "motion for judgment notwithstanding the verdict," plaintiff's three arguments in this motion deal primarily with the verdict form and jury instructions, and not with the evidence presented.  The court notes that the standard for a Rule 50 motion is whether or not a verdict is supported by the *evidence* and not whether a verdict form or jury instructions were erroneous or inconsistent.  Furthermore, while plaintiff's counsel moved for judgment as a matter of law at trial, that motion did not cite jury verdict form inconsistencies or error in the "serious health condition" instruction.   As such, the court finds that plaintiff's motion as it pertains to Rule 50 should be denied as to these issues and finds that plaintiff's motion is more appropriately characterized as a motion to alter or amend the judgment, which the court shall discuss below.

### 3.        Plaintiff's Motion to Alter or Amend the Judgment

Plaintiff also has moved to alter or amend the judgment.[8]  A motion to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e) may be granted only if the moving party can establish (1) an intervening change in controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct

---

50(a)("The second sentence of paragraph (a)(2) does impose a requirement that the moving party articulate the basis on which a judgment as a matter of law might be rendered."); *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

[8]In plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for New Trial (Doc. 105), plaintiff "incorporates by reference" the arguments about to be discussed pertaining to the verdict form.  *See* Doc. 105 at 8.  In the interests of judicial efficiency, the court will address plaintiff's arguments both as a motion to alter or amend the judgment or in the alternative motion for new trial.

clear error or prevent manifest injustice.[9]  Additionally, such a motion does not permit a losing

party to rehash or restate arguments previously addressed or to present new legal theories that

could have been raised earlier.[10]

   Upon careful review of plaintiff's motion, it does not appear that plaintiff is contending

that there is an intervening change in law or new evidence available.  Therefore, the only issue

that remains is whether the court must alter or amend the judgment to correct clear error or

prevent manifest injustice.[11]

   The jury returned its verdict at 2:25 p.m. on November 18, 2005, and was discharged

shortly thereafter.[12]  Plaintiff failed to object at the time the jury was discharged, and did not file

his motion to alter or amend the judgment (Doc. 88) until 4:56 p.m.  The fact that plaintiff failed

to make any objection prior to discharge of the jury, however, does not constitute a waiver of his

right to object.  In the Tenth Circuit, a party challenging an alleged inconsistency in a special

verdict under Fed. R. Civ. P. 49(a) is not required to object to the inconsistency before the jury is

discharged in order to preserve that issue for a subsequent motion before the district court.[13]

Accordingly, the court will proceed to the determination of whether the jury's findings in the

---

   [9]*See Brumark Corp. v. Samson Res. Corp.,* 57 F.3d 941, 948 (10th Cir. 1995).  *See also Campbell v. Meredith Corp.*, 2003 U.S. Dist LEXIS 9409 at *2-*3 (D. Kan. June 3, 2003) (citing *Brumark*).

   [10]*Brown v. Presbyterian Healthcare Servs.,* 101 F.3d 1324, 1332 (10th Cir. 1996).

   [11]*Brumark,* 57 F.3d at 948.

   [12]*See* Minute Entry (Doc. 94).

   [13]*Heno,* 208 F.3d at 851-52; *Johnson v. ABLT Trucking Co., and Ted Tammen*, 412 F.3d 1138, 1142 (10th Cir. 2005)("The members of this panel believe that Rule 49 should be amended...to require parties to object to an inconsistent special verdict before the jury has been discharged.  In this case we adhere, as we must, to circuit precedent.").

verdict form are clear error or work a manifest injustice.

When presented with an argument that a special verdict under Fed. R. Civ. P. 49(a) is inconsistent, the court has a duty to evaluate the jury verdict and try to reconcile the answers to avoid retrial.[14]  The court's duty includes reconciling the jury's answers, rather than looking for inconsistencies, and the jury's responses are to be reconciled not merely one to another, but to the entire case as a whole.[15]  When considering claims of inconsistency, the court must accept any reasonable view of the case that makes the jury's answers consistent.[16]

>    a.    **Whether the jury's answer to Question 1 of Section III of the Verdict Form is inconsistent with its answer to Question 4 of Section I.**

Plaintiff contends that the jury's answer to Question 1 of Section III (the Kansas worker's compensation retaliation claim) of the Verdict Form is irreconcilably inconsistent with its answer to Question 4 of Section I (the FMLA retaliation claim) of the Verdict Form.

Question 1 of Section III (i.e. plaintiff's Kansas worker's compensation retaliation claim) asked the jury:

>    "Did you find by a preponderance of the evidence that is clear and convincing in nature that: The plaintiff sustained an injury on the job for which he could assert a future claim for worker's compensation benefits?"[17]

---

[14] *See Harvey By and Through Harvey v. General Motors Corp*, 873 F.2d 1343, 1346 (10th Cir. 1989).

[15]*Id.* at 1347-48.

[16]*Heno v. Sprint/United Management Co.*, 208 F.3d 847, 851-52 (10th Cir. 2000) (citing *Patton v. TIC United Corp.*, 77 F.3d 1235, 1241 (10th Cir. 1996)); *Jarvis v. Commercial Union Assur. Cos.*, 823 F.2d 392, 395-96 (10th Cir. 1987)(court must harmonize inconsistent verdict and set them aside "only when cacophony reigns").

[17]*See* Verdict Form (Doc. 102) at 4.

The jury answered, "No," to this question.[18]

Question 4 of Section I (i.e. plaintiff's FMLA retaliation claim) asked:

> "Did you find from a preponderance of the evidence that: The plaintiff's absence from work was a substantial or motivating factor that prompted the defendant to discharge the plaintiff?"[19]

The jury answered, "Yes," to this question.[20]

Plaintiff contends that these answers are irreconcilably inconsistent. Specifically, plaintiff states:

> "With respect to Mr. Wilkins' [Kansas worker's compensation] retaliatory discharge claim, since the jury did not find that Mr. Wilkins sustained an injury on the job, it could not have found a causal connection between his exercise of statutory right and his termination [in his FMLA retaliation claim]."[21]

The court disagrees with plaintiff's argument. First, plaintiff is comparing answers from two separate and distinct causes of action – the FMLA retaliatory discharge claim and the Kansas worker's compensation retaliatory discharge claim. Second, plaintiff contends that "the jury did not find that Mr. Wilkins sustained an injury on the job" for purposes of his Kansas worker's compensation retaliatory discharge claim.[22] This is not entirely correct. On the Verdict Form, Question 1 of Section III (i.e. the Kansas worker's compensation retaliation claim), was in fact a two-part question that asked:

---

[18]*Id.*

[19]*Id.* at 1.

[20]*Id.*

[21]Plaintiff's Motion to Alter, Amend the Judgement (Doc. 88) at 1.

[22]*See* Plaintiff's Motion to Alter, Amend the Judgement, for Judgment Notwithstanding the Verdict and/or Motion to Resubmit the Case to the Jury (Doc. 88) at 1.

>"Did you find by a preponderance of the evidence that is clear and convincing in nature that: The plaintiff sustained an injury on the job *for which he could assert a future claim for worker's compensation benefits?*"[23]

The court finds that while the jury could have believed that plaintiff sustained an injury, the jury may *not* have found that the plaintiff proved that he sustained an injury on the job *for which he could assert a claim for worker's compensation benefits.*

Moreover, even assuming *arguendo* that Question 1 of the Kansas worker's compensation retaliation claim only asked whether plaintiff sustained an injury on the job, the court does not find that the jury's answer of "No" to this question is irreconcilably inconsistent with its answer to Question 4 of the FMLA retaliation claim in the Verdict Form, as plaintiff contends.  Question 4 asked the jury whether:

>"The plaintiff's absence from work was a substantial or motivating factor that prompted the defendant to discharge the plaintiff?"[24]

The jury answered, "Yes."  Plaintiff contends that if he did not suffer an injury on the job, then the jury could not have answered, "Yes," to this question.  The court disagrees.  During trial, defendant presented evidence that after plaintiff accepted light duty work consistent with Dr. Fevurly's restrictions, plaintiff failed to show up for that light duty work.  Further, defendant presented evidence plaintiff never alerted his supervisors that his absences from the light duty he accepted were due to any type of work injury.  Finally, defendant presented evidence that the company assessed plaintiff points for these and prior unexcused absences, in accordance with its company policy, and that plaintiff was terminated after he had accumulated points well in excess

---

[23]Verdict Form (Doc. 102) at 4 (emphasis added).

[24]*Id.* at 1.

of defendant's company policy limits.  In other words, defendant  presented evidence at trial that

the real reason plaintiff was discharged was because he had accumulated excessive unexcused

absences in excess of company policy. Under these circumstances, the court finds that the jury

could have reasonably believed defendant's witnesses, and found that plaintiff's unexcused and

unexplained absences from work were the motivating factor behind defendant's decision to

terminate the plaintiff.  Therefore, the court finds that the jury's answers to these questions are

reasonable under the circumstances, are not inconsistent, are not clear error, and otherwise do

not work a manifest injustice.

> **b.    Whether the jury's answer to Question 2 of Section III of the Verdict Form is inconsistent with its answer to Question 2 of Section I.**

Plaintiff next contends that the jury's answer to Question 2 of Section III of the Verdict

Form is irreconcilably inconsistent with its answer to Question 2 of Section I and therefore

works a manifest injustice.  Question 2 of Section III stated:

> "Did you find by a preponderance of the evidence that is clear and convincing in nature that [t]he defendant had knowledge of the plaintiff's injury?"[25]

The jury answered "Yes" to this question.[26]  Question 2 of Section I stated:

> "Did you find from a preponderance of the evidence that [t]he plaintiff gave the defendant the proper 'notice' of the need to be absent from work as defined in Jury Instruction No. 16?"[27]

_____

[25]Jury Verdict Form (Doc. 102) at 4.

[26]*Id.*

[27]Jury Verdict Form (Doc. 102) at 1.

The jury answered "No" to this question.[28]  Plaintiff argues that the answers to these two questions are irreconcilably inconsistent.[29]  The court disagrees.

Once again, plaintiff attempts to compare answer from the separate and distinct causes of action.  The court fails to find the jury's answers are irreconcilably inconsistent.  As to the jury's finding that the defendant "had knowledge of the plaintiff's injury," the court notes that it was essentially undisputed that plaintiff initially notified his supervisor of wrist pain on March 4, 2002.  However, what *was* disputed was whether defendant had adequate "notice" under the FMLA that plaintiff's absences on March 7, 8, and 11, after accepting light duty, were a result of a work injury preventing him from performing his job functions.

The court construes plaintiff's argument as attempting to equate "knowledge" of an injury for purposes of a Kansas worker's compensation retaliation claim with "notice" of the need to be absent from work under the FMLA.  This is a flawed argument.  The court finds it entirely plausible that while the jury could have found that defendant knew plaintiff sustained *an* injury (i.e. plaintiff's wrist pain that he reported on March 4, 2002), the jury may *not* have found that defendant had adequate "notice" under the FMLA of plaintiff's subsequent need to be absent from light duty work on March 7, 8 and 11.

As already discussed, the court has a duty to reconcile the answers, rather than to look for inconsistencies, and the jury responses are to be reconciled not merely to one another, but to the entire case as a whole.[30]  Further, when considering claims of inconsistency, the court must

---

[28]*Id.*

[29]Plaintiff's Motion to Alter, Amend the Judgement (Doc. 88) at 2.

[30]*Id.* at 1347-48.

14

accept any reasonable view of the case that makes the jury's answers consistent.[31] Therefore, the court finds that the jury's answers are reasonable under the circumstances, are not inconsistent, are not clear error, and do not otherwise work a manifest injustice.

<strong>c.      Whether the court's instruction of "serious health condition" amounts to clear error or manifest injustice.</strong>

In his Motion to Amend or Alter Judgment (Doc. 88), plaintiff contends that the court incorrectly instructed the jury on the definition of "serious health condition." As support for his contention, plaintiff states in his motion that he "incorporates by reference herein, Plaintiff's Motion for Reconsideration filed on November 17, 2005."[32] Plaintiff provides no other basis for his motion as to the instruction of "serious health condition." As already discussed, motions to alter or amend judgement do not permit a losing party to rehash or restate arguments previously addressed or to present new legal theories that could have been raised earlier.[33] The court finds that plaintiff is essentially rehashing his previous argument on this issue and, without more, the court cannot say that clear error or manifest injustice exists. Plaintiff's motion on this issue should be denied.

The ultimate problem with plaintiff's arguments in this motion is that they require the court to do the impossible – "to read the collective mind of the jury and determine why it

---

[31]*Heno v. Sprint/United Management Co.*, 208 F.3d 847, 851-52 (10th Cir. 2000) (citing *Patton v. TIC United Corp.*, 77 F.3d 1235, 1241 (10th Cir. 1996)); *Jarvis v. Commercial Union Assur. Cos.*, 823 F.2d 392, 395-96 (10th Cir. 1987)(court must harmonize inconsistent verdict and set them aside "only when cacophony reigns").

[32]Plaintiff's Motion to Alter, Amend the Judgement (Doc. 88) at 2.

[33]*Brown v. Presbyterian Healthcare Servs.,* 101 F.3d 1324, 1332 (10th Cir. 1996).

answered the special verdict form in the way that it did."[34]  This is something that the court simply cannot do.  Therefore, after careful review of the record, the court finds that the jury's answers to the special verdict can be reconciled and further, that there does not appear to be clear error or manifest injustice in the jury's findings.

Therefore, plaintiff's Motion to Alter, Amend the Judgment, for Judgment Notwithstanding the Verdict and/or Motion to Resubmit the Case to a Jury (Doc. 88) will be denied.

**B.      Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105).**

Plaintiff has titled this motion, "Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial." As previously noted, motions for renewed judgment as a matter of law pursuant to Fed. R. Civ. P. 50 are limited to the issues raised in the pre-verdict motion.[35] Upon reviewing plaintiff's current motion, it does not appear that plaintiff is advancing the same arguments or issues previously presented in his motion for judgment as a matter of law at trial. Rather, plaintiff's current arguments appear to be based on alleged procedural deficiencies in the court's Jury Instructions and Verdict Form.  The court therefore construes the grounds for plaintiff's current motion as grounds for a Motion for New Trial pursuant to Fed. R. Civ. P. 59,

---

[34]*Heno*, 208 F.3d at 853.

[35] *See Staley v. Bridgestone/Firestone, Inc.*, 106 F.3d 1504, 1508 (10th Cir. 1997); *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289-90 (11th Cir. 1998)(grounds for Rule 50(b) motion must be clear from the record so that the court can ensure that setting aside the verdict would not be a surprise to the non-movant); *See also* Advisory Committee Notes on Fed. R. Civ. P. 50(a)("The second sentence of paragraph (a)(2) does impose a requirement that the moving party articulate the basis on which a judgment as a matter of law might be rendered."); *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

and *not* grounds for a Motion for Renewed Judgment as a Matter of Law after trial pursuant to Fed. R. Civ. P. 50.

Fed. R. Civ. P. 59(a) provides that a new trial may be granted on all or part of the issues "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  However, motions for new trial are generally regarded with disfavor and "should only be granted with caution."[36]

Plaintiff raises several grounds for this motion: (1) that the court erroneously instructed the jury on the definition of "serious health condition" under the FMLA;[37] (2) that the court erroneously instructed the jury on the definition of "notice" under the FMLA;[38] (3)  that the court's instructions on the elements of the Kansas worker's compensation retaliatory discharge claim were erroneous;[39] (4) that the Verdict Form "asked the jury to decide a different case than the case that was tried by plaintiff" on the FMLA retaliation and Kansas worker's compensation retaliatory discharge claims;[40] (5) that the jury "was not properly instructed and/or was confused" on the issue of damages;[41] and (6) that the court's decision to allow Mr. Yates's

---

[36]*United Phosphorus, Ltd. v. Midland Fumigant, Inc.,* 21 F. Supp. 2d 1247, 1250 (D. Kan. 1998)(quoting *United States v. Thornbrugh*, 962 F.2d 1438, 1443 (10th Cir. 1992)).

[37]Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105) at 2-5.

[38]Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105) at 2-5.

[39]*Id.* at 5-7.

[40]*Id.* at 7-8.

[41]*Id.* at 8.

testimony improperly invaded the province of the jury. [42]   The court will now address each of these issues.

### 1.    Whether the court erroneously instructed the jury on the definition of "serious health condition" under the FMLA.

In evaluating criticisms of jury instructions, the "harmless error" analysis applies in civil cases.[43]  Thus, an alleged faulty jury instruction is harmless error if it does not affect the substantial rights of the parties or does not defeat substantial justice.[44]  In other words, the error is harmless if it could not have changed the result of the case or affected the essential fairness of the trial.[45]  Further, instructional errors require reversal "only if the error is determined to have been prejudicial, based upon a review of the record as a whole."[46]  Conversely, an instructional error will not be discounted as harmless if the court is left with a grave doubt as to whether the error had a substantial influence in the ultimate verdict.[47]

With this guidance, the court finds that the serious health condition instruction contained in Jury Instruction No. 16 was, at most, harmless error.  As already discussed, an error is

---

[42]*Id.* at 8.  In his motion for new trial, plaintiff also incorporated by reference his motion regarding alleged verdict form inconsistencies; however, the court has already addressed those arguments in its ruling on plaintiff's Motion to Alter or Amend the Judgment and will therefore not address them again in this section.

[43]Fed. R. Civ. P. 61.

[44]*See Lusby . T.G. & Y Stores, Inc. et al*, 796 F.2d 1307, 1310 (10th Cir. 1986).

[45]*Id.  See also Connel v. Hallmark Cards, Inc.,* 2002 U.S. Dist. LEXIS 12409 at *3 (D. Kan. June 19, 2002).

[46]*Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.,* 175 F.3d 1221, 1236 (10th Cir. 1999).

[47]*Id.*

harmless if it could not have changed the result of the case or affected the essential fairness of the trial.[48]  On the Verdict Form for plaintiff's FMLA retaliation claim, the jury not only failed to find a "serious health condition," but also failed to find that plaintiff gave defendant proper "notice" of the need to be absent from work.[49]  In other words, the jury found that plaintiff failed to prove two elements of his FMLA retaliation claim.  Any error on the "serious health condition" instruction  did not affect the ultimate outcome of this claim since the jury also failed to find proper "notice," and therefore is harmless error. [50]

Notwithstanding this finding, the court fails to find any error in the "serious health condition" instruction.  Under the FMLA, eligible employees may take up to twelve work weeks of leave within a twelve month period in the event that the employee suffers from a "serious health condition" that makes the employee unable to perform the functions of the positions of such employee.[51]  A "serious health condition" is defined as an "illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice or residential medical care facility; or (B) continuing treatment by a health care provider."[52]

In accordance with the FMLA, the U.S. Department of Labor has issued regulations that define and govern the rights and responsibilities of the parties.[53]  The regulations provide that a

---

[48]*See Lusby . T.G. & Y Stores, Inc. et al*, 796 F.2d 1307, 1310 (10th Cir. 1986); *See also Connel v. Hallmark Cards, Inc.,* 2002 U.S. Dist. LEXIS 12409 at *3 (D. Kan. June 19, 2002).

[49]*See* Jury Verdict (Doc. 102) at 1.

[50]*See Lusby . T.G. & Y Stores, Inc. et al*, 796 F.2d 1307, 1310 (10th Cir. 1986).

[51]29 U.S.C. §2612(a)(1)(D).

[52]*Id.* §2611(11).

[53]*Id.* §2654.

"serious health condition" entitling an employee FMLA leave means an illness, injury, impairment, or physical or mental condition that involves continuing treatment by a health care provider.[54]  The regulations further provide that a serious health condition requires continuing treatment when it causes "[a] period of incapacity (i.e. inability to work, attend school or perform other regular activities due to the serious health condition, treatment therefore, or recovery therefrom) of more than three consecutive calendar days[.]"[55]  Finally, this court has found in *Wessel v. Enersys* that a plaintiff's sole testimony that he was incapacitated for more than three consecutive days alone is not enough to establish that he was suffering from a serious health condition protected under the FMLA.[56]

With these guidelines in mind, the court's jury instruction on "serious health condition" read:

> "The plaintiff must present specific evidence that he suffers from a serious health condition.  Plaintiff cannot solely rely on his own assessment of his health.  The serious health condition must have resulted in plaintiff having an inability to perform assigned work for a period of more than three consecutive calendar days. The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves either inpatient care in a hospital, hospice, or residential medical facility or continuing treatment by a healthcare provider.  Ordinarily, unless complication arise, the common cold, flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc. are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave."[57]

The court arrived at the instruction based on numerous factors, including but not limited

---

[54]29 C.F.R. § 825.114(a)(2).

[55]29 C.F.R. § 825.114(a)(2)(i).

[56]2005 U.S. Dist. LEXIS 3103 *18 (D. Kan. February 17, 2005).

[57]Jury Instruction No. 16 (Doc. 101) at 18.

to the parties' proposed instructions, guidance from the FMLA statute and its regulations, and the unique circumstances of the instant case. Based on these factors, as well as the arguments advanced during the jury instruction conference, the court sought to incorporate the parties' submissions with relevant case law, as well as the FMLA and regulation definitions of "serious health condition." The court did just that in its instruction.

Plaintiff contends that this instruction was erroneous and was "contrary to the language of the statute, contrary to the language of case law from the 10th Circuit...[and] made it impossible for the jury to find that plaintiff was possessed of a serious health condition."[58] Plaintiff takes particular issue with the court's decision to instruct that a "serious health condition" must prevent plaintiff from performing "assigned work" rather than "the functions of the employee's own position."[59] The court  fails to find error.  The court finds that "the functions of the employees own position" and  "assigned work" are similar, if not synonymous, terms.  Moreover, whether the instruction read, "the functions of the employee's own position," or "assigned work," the essence of "serious health condition" under the FMLA is that a plaintiff be unable to perform his current job functions, as evidenced by the FMLA statute stating that a "serious health condition ...makes the employee unable to perform the functions of the position of such employee."[60]   Therefore, the court finds that the instruction on "serious health condition" is in harmony with the FMLA statutes, regulations, and case law, and is therefore not erroneous.

---

[58]Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105) at 3.

[59] *Id.* at 3.

[60] 29 U.S.C. § 2612(a)(1)(D).

Plaintiff contends the court's instruction on "serious health condition" made it "impossible" for the jury to find that plaintiff was possessed of a serious health condition. Specifically, plaintiff argues that the court's instruction "would allow employers to eviscerate the provisions of the FMLA by denying leave to all employees with serious health conditions by claiming to have sedentary work."[61]  The court disagrees.

In this case, evidence was presented to establish that plaintiff's treating physician released him to return to light duty.  It is undisputed that defendant offered plaintiff a *choice* between accepting a light duty position consistent with Dr. Fevurly's restrictions or staying home without pay.  Plaintiff accepted the offered work and he admitted he was able to perform the work without difficulty.  At no point did the evidence show that defendant unilaterally denied plaintiff FMLA leave by "claiming to have sedentary work."  Defendant offered plaintiff a choice, and plaintiff accepted a light duty shift.  Further, at no point did the court instruct the jury that an employer could deny an employee FMLA leave by claiming to have sedentary work. Therefore, the court disagrees with plaintiff's contention that the court's instruction made it "impossible" for the jury to find a "serious health condition."

As a result, the court finds that the jury instruction on "serious health condition" was not erroneous and was not error under the facts of this case.

> **2.      Whether the court erroneously instructed the jury on the definition of "notice" under the FMLA.**

---

[61]Plaintiff's Motion for Renewed Judgment as a Matter of Law or in Alternative for a New Trial (Doc. 105) at 3.

Unless objection to a faulty jury instruction is made before the jury retires, error may not be found later.[62]  In his Motion for New Trial (Doc. 105), plaintiff raises two issues with regard to notice:  (1) that the court failed to instruct the jury on proper notice for unanticipated leave; and (2) that defendant did not dispute that notice was proper in this case.

Upon reviewing the record, the court fails to find a proper objection on the record as to the two issues raised by plaintiff.  The relevant instruction at issue is Jury Instruction No. 16 – the FMLA definitions' instruction.  During the jury instruction conference with the parties, the court specifically asked plaintiff's counsel if he had any objection to Instruction No. 16.[63]  plaintiff's counsel stated, "No objection to the definitions, Your Honor."[64]  Upon reviewing the record, the court fails to otherwise find a proper objection on the record as to the instruction on the definition of "notice." Therefore, the court will overrule plaintiff's objections as to this issue.[65]

Notwithstanding this ruling, the court fails to find error.  Plaintiff contends that the court "incorrectly instructed the jury on the issue of notice."[66]  Specifically, plaintiff contends that the court *failed* to instruct the jury "that notice within a day or two following the need for leave

---

[62]Fed. R. Civ. P. 51.

[63]Partial Transcript of Jury Trial Consisting of Motions and Jury Instruction Conference (Doc. 111) at 45.  The court stated, "Let me go to Mr. Alegria first.  Let's see if he has any objection to 16."  Mr Alegria stated, "No objection to the definitions, Your Honor."

[64]*Id.*

[65] *See* Fed. R. Civ. P. 51.

[66]Plaintiff's Motion for Renewed Judgment as a Matter of Law or in Alternative for a New Trial (Doc. 105) at 3.

when the need is not anticipated constitutes proper notice."[67]

The court disagrees and finds this argument to be without merit.  In the court's Jury Instruction No. 16, the court specifically charged the jury that, "Should the circumstances require leave to begin in less than thirty days, *the [p]laintiff is required to provide such notice as practicable.*"[68]   This "as practicable" language of Jury Instruction No. 16 is in fact *more* liberal than plaintiff's current contention that "notice within a day or two ...constitutes proper notice." Therefore, the court finds plaintiff's contention that the court failed to instruct the jury on notice for unanticipated leave is without merit.

As to plaintiff's second argument with regard to notice – that proper notice was not disputed by defendant – the court again finds the argument to be without merit.  Defendant points out, and the court agrees, that notice was in fact highly contested at trial.[69]  Both Ms. Hemming and plaintiff gave conflicting testimony as to the nature and extent of the voicemail messages plaintiff left with defendant on the days of his absences from light duty work.  As a result, the court finds that "notice" under the FMLA was clearly disputed at trial.

Therefore, upon a review of the record, the court finds that plaintiff failed to raise a proper objection preserving plaintiff's contentions with regard to the "notice" instruction, finds that plaintiff's arguments are otherwise without merit on this issue, and will deny plaintiff's

---

[67]*Id.*

[68]Jury Instruction No. 16 (Doc. 101) at 18-19 (emphasis added).

[69] Defendant's Response in Opposition to Plaintiff's Amended Post-Trial Motions (Doc. 106) at 3.  ("The [p]laintiff testified that his telephone messages to Ms. Hemming on March 7 and 11 gave proper notice; [plaintiff] then embellished his testimony by claiming that he called on March 8 and gave proper notice on that date as well.  Ms. Hemming denied any notice whatsoever on any dates, and the jury obviously believed her.").

motion on these grounds.

> **3.     Whether the court erroneously instructed the jury on the Kansas worker's compensation retaliatory discharge claim.**

Plaintiff contends the court erroneously instructed the jury that plaintiff must prove the prima facie elements of the Kansas worker's compensation retaliation claim. Specifically, plaintiff contends defendant "conceded all elements of the prima face case of retaliation" and "the only issue for resolution by the jury was whether the facts and circumstances of plaintiff's firing amounted to retaliatory discharge."[70]  In its response, defendant denies that it "conceded" all the elements of the prima facie case and further explains that the only thing defendant "conceded" was "that the timing of the discharge decision standing alone was enough to create a genuine issue of material fact for resolution by the jury."[71]

As previously discussed, unless objection to a faulty jury instruction is made before the jury retires, error may not be found later.[72]

Upon a review of the record, the court fails to find a proper objection on the record as to these contentions.  The court further finds that plaintiff's argument is disingenuous at this stage of the litigation.  During the jury instruction conference with the court, held on November 17, 2005, the court provided the parties with the court's proposed instructions, gave counsel ample time to review the court's proposed instructions, and then reconvened with the parties and asked the parties if they had any objections to or additions to the court's proposed instructions.

---

[70]Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105) at 5.

[71]Defendant's Response in Opposition to Plaintiff's Amended Post-Trial Motions (Doc. 106) at 4.

[72]Fed. R. Civ. P. 51.

Specifically, the court reviewed Jury Instruction No. 19 with the parties.  Jury Instruction

No. 19 contained the prima facie elements for the Kansas worker's compensation retaliation

claim.[73]  The court's instruction stated that the plaintiff must prove each of the elements by a

preponderance of the evidence.   Furthermore, if plaintiff *failed* to prove any of the elements,

then the jury's verdict must be for defendant and the jury should not proceed further with that

claim.[74]  At no point during the jury instruction conference did plaintiff raise this particular issue

– that defendant did not dispute the prima facie elements – with the court.[75]  Further, in the

plaintiff's own proposed jury instructions (Doc. 81), plaintiff provided an instruction which

stated in pertinent part:

> "To recover on his claim, plaintiff must prove the following:
>
> 1.      The plaintiff exercised statutory rights under the Kansas Worker's
>         Compensation Act;
> 2.      The employer had knowledge of the plaintiff's protected activity or
>         injury;
> 3.      The employer terminated the plaintiff's employment; and
> 4.      A causal connection existed between the protected activity or
>         injury and the termination."[76]

Nowhere in plaintiff's proposed jury instructions did plaintiff provide the court with a

proposed instruction that defendant did not dispute the prima facie elements of the Kansas

---

[73]Jury Instruction No. 19 (Doc. 101) at 23-24.

[74]*Id.*

[75]*See* Partial Transcript of Jury Trial Consisting of Motions and Jury Instruction
Conference (Doc. 111) at 65 (November 17, 2005).  Upon plaintiff informing the court that he
hadn't "articulated [his] objection to 19," the court said, "Oh, okay.  Go ahead."  Plaintiff then
stated, "We object to the entire last paragraph of that instruction."  *Id.*  Specifically, plaintiff
objected to the last sentence on clear and convincing evidence, and made no mention to the court
about the elements of the Kansas worker's compensation retaliation claim.  *See Id.* at 66-70.

[76]Plaintiff's Proposed Instruction No. 12 (Doc. 81) at 14.

worker's compensation retaliation claim.  These facts, taken as a whole, makes plaintiff's current contention that the elements of the Kansas worker's compensation retaliation claim were "undisputed" or "conceded" particularly disingenuous.  During the oral argument of his Rule 50 motion, plaintiff's counsel argued that plaintiff had, through presenting his evidence, "[met] all the of required elements of plaintiff's claims, both of the FMLA claims and the [Kansas worker's compensation] retaliatory discharge claim."[77]  At no point in the record can the court find plaintiff arguing that elements of entire claims were conceded or undisputed.  Therefore, the court finds plaintiff's current contentions without merit, and therefore will deny plaintiff's motion for new trial on these grounds.

> **4.    Whether the court erroneously asked the jury to decide a different case than the case that was tried by the plaintiff on the FMLA retaliation claim and the Kansas worker's compensation retaliatory discharge claim.**

Plaintiff contends that the court erroneously "asked the jury to decide a different case than the case that was tried by plaintiff."[78]  Specifically, plaintiff takes issue with the Verdict Form and contends that, "[I]n plaintiff's FMLA claims, defendant only disputed whether plaintiff was possessed of a serious [health] condition.  On plaintiff's worker's compensation retaliation claim, defendant did not dispute the four elements of the prima facie claim."[79]  Finally, plaintiff states, "As the Court may recall, plaintiff's counsel was shocked and befuddled

---

[77] Partial Transcript of Jury Trial Consisting of Motions and Jury Instruction Conference (Doc. 111) at 2 (November 17, 2005).

[78] Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105) at 7.

[79] *Id.*

by the court's decision to require the jury to decide each element [of plaintiff's claims]."[80]

In response to plaintiff's contentions, the court is similarly "shocked and befuddled" – as this is the first time that the court has been made aware of a contention that there were undisputed elements in plaintiff's claims.  As previously discussed, plaintiff's counsel repeatedly stated during oral argument of plaintiff's Rule 50 motion that plaintiff had "[met] all the required elements of plaintiff's claims, both of the FMLA claims and the [Kansas worker's compensation] retaliatory discharge claim,"[81] and that, "[D]uring this trial, plaintiff has more than presented sufficient evidence that meets all of the elements of the ... claims to satisfy the Court that *plaintiff* has sustained the burden of proof."[82]  At no point in the record can the court find plaintiff arguing that elements of entire claims were conceded or undisputed or that plaintiff's counsel was in fact "shocked and befuddled" by any of the court's rulings.  Therefore, the court finds plaintiff's current contentions contrary to the record and without merit.

The court provided counsel for plaintiff and defendant with the court's proposed Verdict Form and gave the parties an opportunity to voice any objections.  At no point did plaintiff's counsel inform the court that certain elements were undisputed or conceded or that plaintiff's counsel was "shocked and befuddled."  In fact, in discussing the Verdict Form, the court specifically asked plaintiff's counsel:

> Are any of the questions [contained the Verdict Form] a misstatement of what the law is regarding what the jury should consider, *whether you might want to have it*

---

[80]Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for New Trial (Doc. 105) at 7.

[81] Partial Transcript of Jury Trial Consisting of Motions and Jury Instruction Conference (Doc. 111) at 2.

[82] *Id.* at 3 (emphasis added).

> *collapsed into maybe one or two questions as opposed to the number we provided here?[83]*

Plaintiff's counsel responded:

> I don't see any misstatements of the law.  It's just the difference between the general verdict form and the one the Court has proposed.[84]

The court hardly finds the above response from plaintiff's counsel to be one of shock or befuddlement.  Moreover, the court finds several disputed elements in plaintiff's claims.  "Serious health condition" on plaintiff's FMLA retaliation claim was clearly disputed from a review of the record.  "Notice" under the FMLA retaliation claim was also disputed, as evidenced from both Ms. Hemming's and plaintiff's conflicting testimony regarding plaintiff's phone messages to defendant regarding his absences from light duty on March 7, 8, and 11.  Accordingly, the court finds at least two elements of the FMLA retaliation claim that were disputed at trial.  Additionally, the court rejects plaintiff's renewed contention that the prima facie elements of the Kansas worker's compensation retaliation claim were undisputed.  As previously discussed, plaintiff never raised this issue to the court, even after the court provided plaintiff with its proposed instructions and Verdict Form.  Additionally, plaintiff submitted proposed instructions prior to trial, and included an instruction outlining each element of the Kansas worker's compensation retaliation claim.  Finally, plaintiff failed to submit any instruction that the prima facie elements were undisputed.[85]  These facts lead the court to reject plaintiff's contentions on this issue.

---

[83]Partial Transcript of Jury Trial Consisting of Verdict Form Conference (Doc. 110) at 3 (November 17, 2005).

[84]*Id.*

[85]*See* notes 77-79 and accompanying text.

5.      **Whether the jury "was not properly instructed and/or was confused"**
**on the issue of damages**.

Plaintiff contends that the jury's finding of zero damages on the verdict form was

"clearly contrary to the evidence."[86]  Plaintiff states that "[b]oth parties presented economists,"

with defendant's expert presenting plaintiff's damages, if any, to be approximately $26,890.00

and plaintiff's expert presenting plaintiff's damages at $170,000.00.[87]  Therefore, plaintiff

reasons, "the only evidence before the jury was either figure or a range between both figures,"

and the jury's finding of zero damages on the verdict form is clearly contrary to the evidence.[88]

On the Verdict Form provided to the jury, the section on Damages asked, "What amount,

if any, do you find will compensate the plaintiff for any damages he sustained as a result of the

termination?"[89]

The court fails to find error with the jury's finding of zero damages.  Rather, it appears

that the jury was simply following the general instructions of the court.  In Jury Instruction No.

21, the court specifically charged the jury, "*If you find in favor of plaintiff on his claims*, you

must award him such amounts as you find by a preponderance of the evidence will fairly and

justly compensate him for the damages[.]"[90] Therefore, in the court's view, because the jury had

not found for the plaintiff on any of his claims, the jury simply indicated zero damages as a

_____

[86]Plaintiff's Motion for Renewed Judgment as a Matter of Law or in Alternative for New Trial (Doc. 105) at 8.

[87]*Id.*

[88]*Id.*

[89]Jury Verdict Form (Doc. 102) at 6.

[90]Jury Instruction No. 21 (Doc. 101) at 25 (emphasis added).

30

reflection of their verdict in favor of defendant on all claims.

As a result, the court fails to find error or confusion in the jury's finding of zero damages on the Verdict Form.

### 6.    Whether the court erred in allowing the testimony of Mr. Yates.

Finally, plaintiff "incorporates by reference herein, plaintiff's arguments regarding the court's ruling allowing the testimony of witness Yates as improper and invading the province of the jury."[91]  As the court previously outlined in its order on plaintiff's motion in limine (Doc. 79), it is well established that opinion testimony from decisionmakers may be admissible under Fed. R. Evid. 701, even if it bears on the ultimate issue in the case.

> Under Fed. R. Evid. 701, the testimony of a lay witness "in the form of opinions or inferences" is admissible if those opinions of inferences "are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."  Courts generally hold admissible under Rule 701 evidence in the form of law opinion testimony in discrimination cases when given by a person whose position with the defendant entity provides the opportunity to personally observe and experience the defendant's policies and practices.  Thus, "[l]ay opinion testimony may be helpful even if it bears on the ultimate issue in the case."[92]

Upon a review of the record and Mr. Yates's testimony, the court concludes that his testimony properly falls within the province of Fed. R. Evid. 701, and plaintiff's motion therefore will be denied on this issue.

### III.    Conclusion

Upon a thorough review of the record and plaintiff's post-trial motions, the court fails to

---

[91]Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105) at 8.

[92]Order on plaintiff's Motion in Limine (Doc. 79) at 12 (citing *Brooks v. Barnhart*, 78 Fed. Appx. 52, *59, 2003 WL 22293796, *7 (10th Cir. 2003)(internal citations omitted)).

find sufficient grounds to grant either of plaintiff's motions.  Accordingly,

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Alter, Amend the Judgment, for Judgment Notwithstanding the Verdict and/or Motion to Resubmit the Case to the Jury (Doc. 88) is hereby denied.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Renewed Judgment as a Matter of Law or in Alternative for a New Trial (Doc. 105) is hereby denied.

**IT IS SO ORDERED.**

Dated this 29th day of September, 2006, at Topeka, Kansas.


<u>s/ K. Gary Sebelius</u>
K. Gary Sebelius
U.S. Magistrate Judge